SO ORDERED.

SIGNED this 3 day of October, 2016.

_____
**Joseph N. Callaway
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| JOAN BRITT ROGERS | 16-02884-5-JNC |
| DEBTOR | |

**ORDER SUSTAINING TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTIONS**

The matter before the court is the chapter 13 trustee's objection to the debtor's claim of exemptions, Dkt. 10. A hearing took place in Fayetteville, North Carolina on September 28, 2016.

Joan Britt Rogers filed a petition for relief under chapter 13 of the Bankruptcy Code on June 1, 2016. Ms. Rogers' petition indicates that she lives at 4172 Lovette Road, Lumberton, North Carolina 28358 (the "Residence Lot"). Dkt. 1 at 2. Ms. Rogers' Schedule A/B shows that she also owns real property at 4188 Lovette Road, Lumberton, North Carolina 28358 (the "Adjacent Lot"). Dkt. 1 at 16. Schedule A/B indicates that the value of the Residence Lot is $50,000, while the value of the Adjacent Lot is $40,000.[1] Dkt. 1 at 15, 16. Schedule A/B further identifies land on Lovette

---

[1] Ms. Rogers has subtracted 6% from the value of each property, presumably to deduct a hypothetical real estate broker sales commission and thereby to reach a "current value of entire property" and "current value of the portion [she] own[s]" on Schedule A. The assertion of an automatic six percent deduction where the property is to be retained by the debtor is inappropriate, and the court uses the full value of the property in its analysis contained in this order consistent with prior rulings in this district..

Road without a street or lot number, valued at an asserted $8,800 (the "Land"). Accordingly, and accepting the Debtor's estimates for purposes of this matter, the aggregate value of the real estate listed in Schedule A/B is $98,800.00.

Ms. Rogers' Schedule C claims as exempt as her homestead and residence the combined Land, Adjacent Lot, and Residence Lot (collectively the "Real Property"). Dkt. 1 at 24. Her Schedule C also indicates that First Bank holds a lien in the amount of $37,000 on the Residence Lot and a separate lien in the amount of $29,000 on the Adjacent Lot, and, using the individual property values reduced by six percent, she then claims a total net value of $18,600 and the amount of $30,000 as exempt.[2] *Id.* Apparently, she also claims the Land as exempt, but inexplicably her Schedule C provides a net value of $0.00 for the Land notwithstanding the $8,800 value listed for that property in Schedule A/B and noting an amount of $0.00 owed for any mortgage or lien.

On August 15, 2016, the trustee filed an objection to Ms. Rogers' exemptions, contending that only the Residence Lot is appropriately claimed as exempt under North Carolina General Statutes § 1C-1601(a)(1), as the other property contains a separate house and is not part of Ms.

---

[2] As an aside, Ms. Rogers' Schedule C also includes the following language:

**NOTICE TO STAFF** (Not part of the official form)(Eastern District cases only): To properly advise clients against the possibility that the Trustee contemplate a sale of the property, taking into account the protection afforded by 11 U.S.C. 522(k) and Scott v. U.S. Trustee, 133 F.3d 917 (4th Cir.)(1997), the minimum amount of exemptions which must be available and claimed in order to protect the property from sale is $_____ (per our Estimate of Exemptions Needed to Protect Real Property form). As long as our clients have available and claim at least said minimum amount, the property should be safe from sale, as a practical matter, even though the "total net value" listed on this form appears to exceed the "value claimed as exempt".

Dkt. 1 at 24. The court has noticed this language on other Schedule C forms filed by the same law firm, but doubts that the Debtor intends to include this language in her petition. The court will not comment in this case whether it agrees with the assumptions contained in the instruction, reserving that issue for another day.

2

Rogers' residence. Dkt. 10. On September 2, 2016, Ms. Rogers filed a response, Dkt. 11, contending that the two lots are contiguous, were previously one lot, and were only reclassified "due to limitations in the mortgage financing process."

At the hearing, Ms. Rogers testified that she inherited all of the property from her mother. The Real Property was originally one parcel with one street address, and her mother and stepfather lived in the house now located on the Residential Lot. Ms. Rogers' mother and stepfather built a separate building on what is now the Adjacent Lot that they operated as a country store. The store closed when Ms. Rogers' stepfather became ill, and her mother subsequently used the building for storage. After Ms. Rogers inherited the Real Property, she and her husband renovated the store building into a two bedroom house that they hoped to rent to third parties. Ms. Rogers' husband passed away at about the same time that the renovations were completed. Ms. Rogers testified that she has been able to rent the house consistently since 2010, although she has not always successfully collected the corresponding month's rent.

While the timing is unclear, Ms. Rogers further testified that after she inherited the Real Property, she took out a mortgage and the bank obtained a lien on all of the Real Property as security. Ms. Rogers testified that she later asked the bank if she could separate the Real Property so that she could rent the Adjacent Lot. The bank agreed, and Ms. Rogers proceeded to subdivide the aggregate land property into two lots, the Residence Lot and the Adjacent Lot, so that each has a separate deed. It appears from the Schedules that the mortgage was also allocated between those two lots. Ms. Rogers also testified that in order to rent the Adjacent Lot, the county required that she first obtain a separate street address for that property. There was no discussion of the Land at the hearing, so its origin and place in the land and exemption puzzle is not clear. For example, the

effect of the loan modification upon any lien against the Land is not clear from the Debtor's schedules.

Ms. Rogers finally testified that the tenant of the Adjacent Lot initially was not able to pay rent, so he helped her with tasks around the Real Property. The tenant now pays rent of $400 per month, which Ms. Rogers uses to pay insurance and taxes on all of the Real Property and for other costs. The rental income is not listed in Schedule A/B as an asset of the Debtor.

Section 522 of the Bankruptcy Code provides that a debtor may choose to claim exemptions under either federal law (as set forth in § 522(d)) or applicable state law, unless the applicable state law "does not so authorize." 11 U.S.C. § 522(b). Because Ms. Rogers has resided in North Carolina at all relevant times, North Carolina law is the "applicable law" for purposes of § 522.  North Carolina is an "opt out" state, meaning that debtors who file bankruptcy in North Carolina must claim exemptions under North Carolina law, and are not entitled to elect the federal exemptions. N.C. Gen. Stat. § 1C-1601(f). Accordingly, the court looks to North Carolina law when determining a debtor's claimed exemptions.  *In re Cook*, Case No. 02-11321 at 2 (Bankr. W.D.N.C. March 4, 2003).

North Carolina General Statutes § 1C-1601(a)(1) provides that

> [e]ach individual, resident of this State, who is a debtor is entitled to retain free of the enforcement of the claims of creditors:
> (1) the debtor's aggregate interest, not to exceed thirty-five thousand dollars ($35,000) in value, in real property or personal property that the debtor or a dependent of the debtor . . . uses as a residence.

In determining whether a particular piece of property is properly exempted, the court looks to the use of the property as of the date of the filing of the petition. *See In re Love*, 42 B.R. 317, 319 (Bankr. E.D.N.C. 1984), *aff'd*, 54 B.R. 947 (E.D.N.C. 1985) ("North Carolina law clearly provides for a residential exemption which is conditioned upon continued use as a residence and continued

4

ownership. If the exempt residence ceases to be used as a residence . . . the property is no longer exempt.").[3] Further, the language of the statute "suggests the purpose of the residential exemption statute is 'to secure debtors and their families the shelter of a homestead.'" *In re Stox*, Case No. 10-01823 at 6 (Bankr. E.D.N.C. May 27, 2011) (quoting *Cook*, Case No. 02-11321 at 4).

The evidence establishes that neither Ms. Rogers nor any family member has ever actually resided in the structure on the Adjoining Lot.  However, Ms. Rogers asserts that the Adjoining Lot is part of her residence because, among other things, (a) it once was part of the same tract; (b) it remains contiguous to her home; and (c) she needs and uses the rental income derived from that parcel to make tax and insurance payments on the Residential Property. From the latter assertion, she contends that the Adjoining Lot is necessary for the support, existence, or enhancement of residential property as described in *Stox*.

In *Stox*, the court looked to both the Merriam-Webster Dictionary definition of the word "residence" and the Bankruptcy Code's definition of "debtor's principal residence" to help analyze whether an adjoining property could properly be exempted as part of the debtor's homestead. Specifically, Merriam-Webster Dictionary defines "residence" as "the act or fact of dwelling in a place for some time," and as "a building used as a home." www.merriamwebster.com.

Section 101(13A) of the Bankruptcy Code provides:

The term "debtor's principal residence" -
(A) means a residential structure, including incidental property, without regard to whether that structure is attached to real property; and
(B) includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer.

Section 101 (27B) provides:

---

[3] There are a few situations in which continued occupancy is not required, none of which are applicable here.  *See In re McLamb*, Case No. 08-04047-8-ATS at 3 (Bankr. E.D.N.C. Jan. 23, 2009).

5

> The term "incidental property" means, with respect to a debtor's principal residence –
> (A) property commonly conveyed with a principal residence in the area where the real property is located;
> (B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and
> (C) all replacements or additions.

The Adjacent Lot does not fall within any of these definitions of "residence," nor does it otherwise sufficiently conform with the definition of "incidental property." The evidence does not establish any overlapping use of the properties. Rent and the derived income stream is completely independent from the use of the Residential Lot. Nothing at law or contract requires Ms. Rogers to earmark rent for tax and insurance costs for the Residential Lot.

In *Stox*, the debtor's disabled son and other relatives lived in mobile homes situated on the adjoining property, the properties shared a driveway, and gardens and grapevines on each property served to feed the families. The court found that the adjoining property was properly considered part of the homestead, distinguishing the case from one in which an adjacent property was used to pasture rescued horses.[4] *Stox*, at 5 (distinguishing *In re Lanier*, 2008 WL 1806117 (Bankr. E.D.N.C. April 18, 2008), aff'd, 394 B.R. 382 (E.D.N.C. 2008)).

The only evidence in this case that links the two properties are the fact that they were, at one time, one property, and that the rental income is used to pay taxes and insurance for the properties. The tenant is not a dependent or relative of the debtor, there is no evidence of overlapping use of the properties, and the subdivision of the property appears to have been to enable the debtor to use the Adjoining Lot to produce income. Looking to the use of the property

---

[4] Based on the facts as recited in the opinion, it appears that the *Stox* court could also have allowed the exemption as the residence of a dependent of the debtor, which would have obviated the need to determine whether the property supported the residence of the debtor.

6

as of the date of filing, the court finds that the Adjoining Lot is not the debtor's residence for purposes of the homestead exemption. Similarly, there being no evidence with respect to the Land, that property is also not properly considered the debtor's residence.

Based on the foregoing, the trustee's objection to Ms. Rogers' claim of a homestead exemption is SUSTAINED.  Only the property at 4172 Lovette Road, Lumberton, North Carolina 28358 may properly be claimed as exempt pursuant to North Carolina General Statutes § 1C-1601(a)(1).  Nothing in this order precludes Ms. Rogers from claiming the Adjoining Lot or Land as exempt under her wildcard or any other appropriate available exemption. Ms. Rogers is directed to amend her Schedule C within 15 days of the date of this order to assert exemptions consistent with this order.

**END OF DOCUMENT**